UNITED STATES of America, Appellee,

v.

**William J. WILBUR et al.,
Defendants, Appellants.**

No. 76–1097.

United States Court of Appeals,
First Circuit.

Dec. 16, 1976.

Francis J. Frasier, Exeter, N.H., with whom Shute, Engel & Frasier, P.A., Exeter, N.H., was on brief, for appellants.

Robert A. Schwartz, Asst. U.S. Atty., Concord, N.H., with whom William J. Deachman, U.S. Atty., Concord, N.H., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and GIGNOUX, District Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

Appellants William J. Wilbur and his wife, Donna L. Wilbur, appeal from their convictions on eight counts of violating provisions of the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* The counts were from an eleven-count indictment against the Wilburs and Valley Trading Post, Inc., a federally licensed firearms dealer, of which they were president and treasurer. The court dismissed the charges against Valley, finding that the company did not act independently of the Wilburs. As for the Wilburs, Counts I, II and III charged them with unlawful possession, transfer, and sale of a machine gun to an undercover federal agent, and Counts IV–XI charged them with recordkeeping violations arising out of the sale of additional firearms to the same agent on three separate occasions in 1975. At the suggestion of the Government, the court dismissed Counts II and III as repetitive of the unlawful possession charge contained in Count I. The jury returned a verdict of not guilty on Count I but found the Wilburs guilty of the recordkeeping violations under Counts IV–XI.

Appellants raise four claims of error on appeal: (1) the district court erred in admitting the record books of Valley Trading Post seized during an inspection search by federal agents; (2) the district court erred in not granting a judgment of acquittal on the defense of entrapment; (3) the defense was unreasonably curtailed in final argument; and (4) the Government was permitted unfair argument. We find no merit in any of these assertions.

At trial appellants moved to suppress records of the firearms transactions and of the receipt and disposition of firearms of Valley Trading Post, which had been seized by agents of the Bureau of Alcohol, Tobacco and Firearms (ATF) during a compliance check on November 12, 1975. The records were introduced by the Government to prove that the required Firearm Transaction Record, Form 4473, was not filled out by Mr. or Mrs. Wilbur on any of three occasions, subsequent to the alleged machine gun transaction, when they sold guns to an undercover agent, and that those sales were also omitted from Valley's record books in violation of 18 U.S.C. § 922(m). *See id.* § 923(g); 27 C.F.R. §§ 178.24 & .25 (1976). In moving to suppress, appellants urged that the fourth amendment prohibited the ATF agents from seizing the records without a search warrant. The Government, in response, pointed to the agents' statutory authority to enter the premises "for the purpose of inspecting or examining (1) any records or documents required to be kept . . . and (2) any firearms or ammunition kept or stored . . . ." 18 U.S.C.A. § 923(g); *see* 27 C.F.R. 178.23 (1976). The district court refused to suppress, we think properly, on the authority of *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), which upheld the seizure of illegal weapons found during a compliance check. The compliance check here had revealed that the Wilburs had for sale two or three dozen guns which had not been entered on the books, and the Government, being properly on the premises to inspect records, documents, firearms, and ammunition, was entitled to seize the incriminating records. *See Warden v. Hayden,* 387 U.S. 294, 300–10, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

Appellants try to distinguish *Biswell* on the ground that the instant compliance search was conducted after the indictment was returned and while an arrest warrant for Mr. Wilbur and a summons for Mrs. Wilbur were outstanding. The timing of

* Of the District of Maine, sitting by designation.

the compliance check is said to show that the agents relied on their statutory authority not for the purpose of "inspecting or examining" records and firearms to determine whether Valley Trading Post was in compliance with the recordkeeping requirements but rather for the purpose of seizing evidence which they knew would be helpful in prosecuting the Wilburs. We do not find this distinction persuasive. The Supreme Court in *Biswell* approved warrantless inspection searches conducted under 18 U.S.C. § 923(g) in broad terms:

". . . if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible."

*United States v. Biswell, supra,* 406 U.S. at 316, 92 S.Ct. at 1596. *See United States v. Petrucci,* 486 F.2d 329 (9th Cir. 1973), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974). The Court held additionally that compliance checks do not intrude on a dealer's "reasonable expectation of privacy": "When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection." *United States v. Biswell, supra,* 406 U.S. at 316, 92 S.Ct. at 1596. We see little room in the Supreme Court's reasoning for distinguishing between pre- and post-indictment inspections. Deterrence can be served by inspection at either time, and a licensee would have no reason to expect that his records, firearms and ammunition would cease to be subject to "effective inspection" merely because he was indicted—indeed, the converse

would seem true. A rule allowing federal agents to conduct a warrantless search of a dealer's premises only until their suspicions were aroused or, as here, the facts established probable cause, would make little sense.

■ Appellants claim that the evidence supporting their entrapment defense was so overwhelming that the district court's refusal to acquit on this ground was error and that the jury's implicit rejection of the defense was contrary to the evidence.* The Wilburs point to evidence that they never had any previous trouble with ATF and were themselves upright and law-abiding; and they argue in their brief that the undercover agent induced them to enter into the improper transactions.

■ There are several flaws in this approach. At trial Mr. Wilbur testified that he refused to sell the agent guns owned by Valley but then offered the agent other weapons, saying: "I do have some of my own guns, my own personal collection I am going to sell . . . ." This version, reiterated at final argument, is not easily reconciled with the contention that Wilbur was entrapped into committing an illegal act by the inducement of an overreaching agent.

More fundamentally, the entrapment argument ignores the Supreme Court's recent observation "that entrapment is a relatively limited defense", *United States v. Russell,* 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973), which presents essentially a jury question on whether the defendant was "predisposed" to commit the offense. *Id.* at 433, 93 S.Ct. 1637; *Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *United States v. Principe,* 482 F.2d 60 (1st Cir. 1973). There was ample evidence for the jury to find predisposition. The Government's informer, himself a firearms dealer, testified that

---

* Appellants also argue that the district court erred in charging the jury that it was to consider the entrapment defense to Count I separately from the entrapment defense to Counts IV–XI. As the Wilburs did not register an objection to the instruction in accordance with Fed.R.Crim.P. 30, they are now constrained to argue that the instruction constituted plain error. Fed.R.Crim.P. 52(b). We cannot say that the court's instructions on entrapment were erroneous in any respect, *see United States v. Wells,* 506 F.2d 924 (5th Cir. 1975), let alone that there were errors that affected "substantial rights". Fed.R.Crim.P. 52(b).

several months before the first purported transaction between Mr. Wilbur and the undercover agent, which formed the basis of Count I, Mr. Wilbur mentioned to him that he could get machine guns from a contact in New York City and offered them for sale. The informer went on to state that on the day of the first transaction between Mr. Wilbur and the agent, Wilbur contacted him again to say that he could get machine guns for sale, "[a]nd he said they would be without papers, and, of course, they were cash transactions, they were not registered." It was in response to this offer that the informer arranged the meeting between Mr. Wilbur and the undercover agent at which the agent purchased a machine gun. At that meeting, according to the agent's testimony, Mr. Wilbur showed him a replica of a machine gun which Wilbur said "could come in handy if anybody reported to the police that I had a machine gun. . . . I could show [the police] the replica . . . and they would go away, and I would still have a real machine gun." And as that meeting concluded, the agent testified, Mr. Wilbur inquired whether the agent would be interested in more machine guns. With regard to the three subsequent transactions with the Wilburs, the agent testified that Mr. Wilbur explained how he was able to sell certain weapons without filling out the necessary paper work and described the tagging system in their shop which indicated which weapons could be sold without papers. The agent stated that Mrs. Wilbur was present during several of these discussions, had commented "how they almost got caught" on one sale of an unregistered gun, had also explained the tagging system to him, and offered weapons for sale without papers. This evidence was clearly sufficient to warrant a jury's concluding that Mr. and Mrs. Wilbur were predisposed to deal in unregistered firearms.

■ Appellants' final two claims of error focus on the closing arguments of counsel. It is contended that the district court erred in sustaining an objection to defense counsel's statement to the jury that an issue in the case "is the constitutional right to bear arms. It is a Second Amendment of our Constitution and it is very important." Appellants now contend, though they did not make the point at the time to the district court, that the court's action prevented them from fully articulating their defense that the guns sold to the undercover agent were their personal weapons, not part of the inventory of Valley Trading Post. We fail to see how the court's action prejudiced appellants in any way. They presented this defense elsewhere in their argument without relying on the second amendment, and the court later charged the jury fully on the defense. In curtailing counsel's argument on the second amendment, the court acted properly to prevent confusion lest the jury believe that the Constitution provided the Wilburs with a legal defense.

■ Appellants finally claim that several comments made by the prosecutor in his closing argument, which they objected to at the time, unfairly prejudiced them. We have reviewed the challenged comments in the context of the Government's entire closing argument and think they were proper rebuttal to the defense of entrapment and proper support for the credibility of a key Government witness. The district court has broad discretion in curtailing or allowing comments in closing argument, *United States v. Pruitt,* 487 F.2d 1241 (8th Cir. 1973), and it did not abuse its discretion here.

*Affirmed.*