USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1131 UNITED STATES OF AMERICA, Appellee, v. ANTHONY J. GRABIEC, JR., Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Scott F. Gleason with whom Gleason Law Offices was on brief for ________________ ____________________ appellant. George B. Henderson, II, Assistant United States Attorney, with ________________________ whom Donald K. Stern, United States Attorney, was on brief for _________________ appellee. ____________________ September 25, 1996 ____________________ ALDRICH, Senior Circuit Judge. Defendant Anthony _____________________ J. Grabiec, Jr., connected with an illegal gambling and loan- sharking organization known as the Winter Hill Gang, was found guilty of various racketeering offenses, 18 U.S.C.  1962(c) and (d), but acquitted on one count under 18 U.S.C.  894(a). On this appeal he complains of a prejudicial argument by the prosecutor in his final summation to the jury, and of the court's refusal to allow him to make a particular argument based on the government's opening statement. We affirm. After defendant's brief's lengthy exposition of various types of improper arguments, their possibly serious consequences, and effective and ineffective cures, it developed that the prosecutor's offense, after defendant had charged him with "bias . . . puffery . . . bombast and . . . hot air"1 was to speak of the defense as "laughable." More exactly: [I]f there is any bombast, puffery and hot air in this case, it's not coming from our side of the table. In fact, the defense in this case would be laughable if the crimes involved were not so serious. It further appeared that, upon defendant's objection, the court said to the jury, "Well, the jury will understand that  ____________________ 1. Five times. -2- this is argument, not evidence. It will be taken that way." The defendant said nothing further. This silence, of course, means defendant must now prove plain error. United States v. Wihbey, 75 F.3d 761, 769 _____________ ______ (1st Cir. 1996) (citing United States v. Olano, 507 U.S. 725, _____________ _____ 731 (1993)); Fed. R. Crim. P. 52(b). We do not, however, find even simple error. We can agree with defendant that we have long held that counsel must not express a personal opinion. Greenberg _________ v. United States, 280 F.2d 472, 475 (1st Cir. 1960) (Aldrich, _____________ J.). Again, in United States v. Nickens, 955 F.2d 112, 121 _____________ _______ (1st Cir.), cert. denied, 506 U.S. 835 (1992), we said, "This _____ ______ court has repeatedly stated that it is improper for a prosecutor to inject personal beliefs about the evidence into closing argument." (citations omitted). Although there is perhaps a heavier burden on prosecutors, the rule applies both ways. In United States v. Young, 470 U.S. 1, 8-9 ______________ _____ (1985), the Court said, "Defense counsel, like the prosecutor, must refrain from interjecting personal beliefs into the presentation of his case." (citations omitted). Strict application of this rule in the course of extended argument, resulting in constant "I suggest to you that . . . " "I ask you to find . . . " becomes tiresome. We have been content with the court, in its discretion, substituting "the standard instruction that arguments of counsel are not -3- evidence." United States v. Bennett, 75 F.3d 40, 46 (1st ______________ _______ Cir. 1996), petition for cert. filed, __ U.S.L.W. __ (U.S. ________ ___ _____ _____ Jun. 5, 1996) (No. 95-9237). There the prosecutor stated that a defense argument was a "diversion." We were satisfied with the court's giving that instruction. We are equally satisfied here. Bennett, in fact, is even more helpful. The _______ prosecution there had asserted that one of defendant's arguments "doesn't pass the laugh test." We accepted that as within the ordinary "rough and tumble," and not violating the prosecutor's duty "to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel." Id.  ___ Even without Bennett the prosecutor's conduct was _______ unexceptional for there is another rule. As against defendant's citation of the oft-quoted adjuration to prosecutors in Berger v. United States, 295 U.S. 78, 88 ______ ______________ (1935), defendant fails to note the Court's more recent observation: [I]f the prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," such comments would not warrant reversing a conviction. United States v. Young, 470 U.S. at 14 (footnote omitted). _____________ _____ After defendant's oratorical charges, five times repeated, it scarcely lay in his mouth to object to a single reply in like -4- tone. United States v. Whiting, 28 F.3d 1296, 1303 (1st ______________ _______ Cir.), cert. denied, ___ U.S. ___, 115 S. Ct. 378 (1994); _____ ______ United States v. Nickens, 955 F.2d 112 at 122; United States ______________ _______ _____________ v. Maccini, 721 F.2d 840, 846 (1st Cir. 1983). Even tested _______ as simple error this claim is frivolous. Second, defendant maintains that the court erred in restricting his closing argument, thereby ensuring conviction on Count 57, one of two extortion charges. Specifically, he contends he was precluded from arguing to the jury the prosecution's failure to introduce evidence promised in its opening statement. During his opening, the prosecutor, in an attempt to describe the defendant's collection methodology, told the jury it would hear evidence that: One night [Grabiec] even barged into Mr. Gagliardi's home in a frenzy, grabbed his wallet, cut up Mr. Gagliardi's credit cards in front of Mr. Gagliardi's wife and children. I suggest to you that there can be nothing more terrifying than having somebody come into your home in front of your wife and children and doing something like that. While Gagliardi did eventually testify to a nighttime visit from the defendant that left him feeling "very, very upset," he also testified that he had never been threatened nor intimidated. When the government sought to introduce a portion of a tape of monitored conversations between Grabiec, -5- Gagliardi and others contradicting Gagliardi's denial of intimidation,2 the trial judge sustained the defendant's objection and excluded the evidence. The defendant, in his closing argument, sought to seize the moment by reminding the jury, "In the opening statement, Mr. Wyshak said to you that there was going to be evidence that in the middle of the night Mr. Grabiec barged into the home of Mr. Gagliardi and was threatening him in front--," at which point the prosecutor objected. The court sustained the objection and cautioned the jury that it "heard what was said and you will take your own memory both of the arguments and of the evidence rather than what opposing counsel says the other counsel said." Defendant did not attempt to rephrase his argument nor did he object to the ruling or request a curative statement regarding the prosecutor's opening statement. After the verdict, during a colloquy concerning the question of defendant's immediate detention under 18 U.S.C.  3143(a)(2), defendant contended that he had been prevented from making, what was in his view, a legitimate argument during summation that was directly relevant to his conviction on the extortion count. The prosecution responded that the restriction was proper because "essentially defendant was  ____________________ 2. On the tape, Gagliardi stated that "[Grabiec] came into my house and he was fucking terrorizing me in front of my wife."  -6- trying to impugn the integrity of the Government by commenting on the fact that they didn't hear evidence which the defendant on its own motion asked not to be heard by the jury. . . ." After reviewing the transcript, the court observed: [I]t was that middle-of-the-night charge that triggered my immediate ruling: "Objection sustained." There is a lot of difference between saying he barged in in a frenzy in front of his wife at night, cut up his credit cards, and saying he barged in in the middle of the night. That carries an impression after everybody's gone to bed. It's quite a different charge. And if you're going to quote the other side's argument, you need to be accurate about it. Defendant argues that his Sixth Amendment right to assistance of counsel was violated by the court's restriction of his closing argument. See Herring v. New York, 422 U.S. ___ _______ ________ 853 (1975). Had the jury been able to consider the government's failure to produce this evidence, he maintains, it would not have convicted on this extortion charge as it had not convicted on the parallel charge involving another victim. The government, while maintaining that its reason for objecting was valid, adds that defense counsel's mischaracterization warranted the court's action. Because defendant failed to object to the court's ruling and did not attempt to rephrase his argument, we again review only for "plain error," requiring him to "show an obvious and clear -7- 7 error under current law that affected his substantial rights." United States v. Phaneuf, 91 F.3d 255, 263 (1st ______________ _______ Cir. 1996); United States v. Procopio, 88 F.3d 21, 31 (1st _____________ ________ Cir. 1996); United States v. Gilberg, 75 F.3d 15, 18 (1st ______________ _______ Cir. 1996) (citations omitted). Under the Sixth Amendment, a defendant is entitled to the assistance of counsel, including the delivery of a closing argument which is "a basic element of the adversary factfinding process in a criminal trial." Herring, 422 U.S. _______ at 858. The court, however, has broad discretion over the scope of summations. Id. at 862; United States v. Wood, 982 ___ _____________ ____ F.2d 1, 4 (1st Cir. 1992); United States v. Coast of Maine _____________ ______________ Lobster Co., 557 F.2d 905 (1st Cir.), cert. denied, 434 U.S. ___________ _____ ______ 862 (1977); United States v. Wilbur, 545 F.2d 764, 767 (1st _____________ ______ Cir. 1976). Here the court upheld the government's objection because, in its opinion, defendant mischaracterized the prosecution's opening statement. There is a difference between "middle of the night" and "one night;" in the context of "barging in," the former carries more of an aura of menace than the latter. To disallow a deviation from opposing counsel's statement was well within the court's discretion. Moreover, contemporaneous instruction to the jury to use its "own memory" of the arguments and evidence rather than counsels' representations, in no way constrained defendant from continuing properly with his argument, without -8- 8 paraphrasing opposing counsel. We find no error plain or otherwise. Affirmed. ________ -9- 9