**UNITED STATES of America, Appellee,**

v.

**Edwin HERNANDEZ, A/K/A Edwin Hernandez–Favale, Defendant, Appellant.**

No. 97–1944.

United States Court of Appeals, First Circuit.

Heard May 5, 1998.

Decided June 12, 1998.

Edgardo Rodriguez–Quilichini, Assistant Federal Defender, with whom Joseph C. Laws, Jr., Federal Public Defender, was on brief, for appellant.

Antonio R. Bazan, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, José A. Quiles–Espinosa, Senior Litigation Counsel, Camille Vélez–Rivé and Nelson PérezSosa, Assistant United States Attorneys, were on brief, for the United States.

Before SELYA, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

SELYA, Circuit Judge.

Tried on a three-count indictment, defendant-appellant Edwin Hernandez–Favale (Hernandez) prevailed on two. He now seeks a clean sweep. For the reasons that follow, we affirm his conviction.

## I. BACKGROUND

We present the facts in the light most congenial to the guilty verdict, consistent

with record support. *See United States v. Maraj,* 947 F.2d 520, 522–23 (1st Cir.1991).

In the early evening of January 30, 1996, Juan Carlos Lado, driving a Nissan sports car, stopped at a traffic light in the Isla Verde section of San Juan, Puerto Rico. A stranger poked a gun (described as a small, nickel-plated pistol) through Lado's open car window, threatened his life, forced him to exit the vehicle and disgorge his valuables, and ultimately absconded with the car and the loot. Lado kept a .45 caliber pistol secreted within the vehicle, and the perpetrator unwittingly made off with that firearm as well.

Lado immediately called the police, who were able to recover his automobile that night. Lado retrieved it the next day. His pistol was gone, but he discovered a full ammunition magazine (which neither belonged to him nor fit his gun) under the driver's seat. Lado informed the authorities of these facts and turned over the magazine.

On February 3, law enforcement officers arrested Hernandez (a previously convicted felon who had a history of involvement in violent crimes) and a companion (known only as Alicea) on charges unrelated to the January 30 carjacking. When the police discovered a pistol on Alicea's person and identified it by its serial number as Lado's, they quickly arranged a photographic spread. Reviewing the spread, Lado tabbed Hernandez as the man who accosted him and absconded in his Nissan.

A federal grand jury thereafter charged Hernandez with carjacking, 18 U.S.C. § 2119(1) (1994), using or carrying a firearm during a crime of violence, 18 U.S.C. § 924(c)(1) (1994), and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (1994). A petit jury acquitted Hernandez on the first two counts but convicted him on the third. Judge Perez–Gimenez denied Hernandez's post-trial motions and this appeal ensued.

## II. ANALYSIS

The appellant attacks his conviction on three fronts. We discuss his claims sequentially, interspersing our discussion with fur-

ther facts as necessary to place each claim into proper perspective.

### A. *Judgment of Acquittal.*

■ After the jury verdict, the appellant moved under Fed.R.Crim.P. 29(a) for judgment of acquittal on the third count. The district court denied this motion, adjudging the evidence presented at trial sufficient to support the felon in possession conviction. On appeal, Hernandez admits his status as a previously convicted felon but assigns error to the lower court's ruling on the ground that the government failed to prove his possession of a firearm beyond a reasonable doubt.

■ We review Rule 29 determinations de novo. *See United States v. Carroll,* 105 F.3d 740, 742 (1st Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 2424, 138 L.Ed.2d 187 (1997). The Rule 29 standard is identical in both the trial and appellate courts; the tribunal must discern "whether, after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." *United States v. O'Brien,* 14 F.3d 703, 706 (1st Cir.1994). This formulation requires that "we consider all the evidence, direct and circumstantial, and resolve all evidentiary conflicts in favor of the verdict." *Carroll,* 105 F.3d at 742.

In support of his claim of evidentiary insufficiency, the appellant makes two basic points. First, he asseverates that there was no direct evidence to support his conviction because the authorities never recovered the carjacker's gun (and, therefore, the jury never saw it). We reject this asseveration out of hand. The government presented direct evidence of Hernandez's guilt in the form of Lado's eyewitness testimony that Hernandez was armed. (Indeed, Lado described the gun in some detail and testified that the appellant first put it to his head and later *hit* him across the mouth with it.) Since the jurisprudence of Rule 29 requires that a reviewing court defer credibility determinations to the jury, *see O'Brien,* 14 F.3d at 706, this testimony, in itself, is enough to support

the "possession of a firearm" element of the offense of conviction.

■ In all events, it is common ground that "the criminal law does not place a special premium on direct evidence." *Id.* To the contrary, the prosecution may satisfy its burden of proof by direct evidence, circumstantial evidence, or any combination of the two. *See id.; see also United States v. Echeverri,* 982 F.2d 675, 677 (1st Cir.1993). Given Lado's testimony and the otherwise-unexplained presence of a magazine full of bullets in the stolen car, a rational jury surely could have believed that the appellant brandished a firearm on January 30, 1996.

■ The appellant next posits that his conviction cannot stand because it is inconsistent with the jury's verdict on the other two counts. This thesis, too, is flawed. For one thing, inconsistent verdicts do not automatically require reversal of a conviction. *See United States v. Powell,* 469 U.S. 57, 62, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Dunn v. United States,* 284 U.S. 390, 393–94, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States v. Bucuvalas,* 909 F.2d 593, 597 (1st Cir.1990). Both the interest and the appearance of justice are fully vindicated as long as the reviewing court assures itself that, regardless of an acquittal in some other case or on some other count, the evidence is legally sufficient to support a guilty verdict on the count of conviction.[1] *See Powell,* 469 U.S. at 66, 105 S.Ct. 471; *Bucuvalas,* 909 F.2d at 597. The evidence of record here easily passes that modest test.

For another thing, a close look at the statutes involved in this case reveals no necessary inconsistency. The statute underlying the carjacking count, on which the jury acquitted the appellant, requires the prosecution to prove beyond a reasonable doubt that the defendant (1) took a motor vehicle, (2) that has moved in interstate commerce, (3) from another person, (4) by force and violence or by intimidation, (5) with the intent to cause death or serious bodily harm. *See* 18 U.S.C. § 2119 (1994). The statute underlying the second count, on which the jury also acquitted, requires the government to prove beyond a reasonable doubt that the defendant (1) used or carried a firearm, (2) during and in relation to a crime of violence or drug trafficking offense.[2] *See* 18 U.S.C. § 924(c)(1) (1994). In theory, the jury could have decided that, while Hernandez was indeed the person who accosted Lado, gun in hand, the government failed to prove the intent element in the carjacking statute (and, thus, failed to prove the "crime of violence" element needed to convict under the "use and carry" statute). The probability of such a scenario is not the issue. It is possible, and a finding made pursuant to this scenario would not in any way impugn the guilty verdict on the felon in possession count.[3] So viewed, the verdicts are not irretrievably inconsistent.

### B. *The Prosecution's Summation.*

■ The appellant next calls our attention to the prosecutor's comments concerning constructive possession.[4] He assigns error

1. The reasons for this rule are manifest. Assuming inconsistent verdicts, there is simply no way of knowing which verdict is correct and which is not. *See Dunn,* 284 U.S. at 393–94, 52 S.Ct. 189. A jury may be convinced that a defendant is guilty, yet may acquit him on certain charges based on sympathy or other irrelevant considerations.

2. The indictment posited that the carjacking charged in count one constituted the "crime of violence" needed to convict on count two. *See* 18 U.S.C. § 924(c)(3) (1994) (defining "crime of violence").

3. The elements of a felon in possession charge are (1) that the defendant had a previous felony conviction, and (2) possessed a firearm, (3) which traveled in interstate commerce. *See* 18

U.S.C. § 922(g)(1) (1994). Since the government offered proof that no firearms are manufactured in Puerto Rico, the "interstate commerce" prong was satisfied here.

4. During the initial portion of his closing statement, the Assistant United States Attorney commented:

> Now you have a description of Mr. Juan Carlos Lado. You put it together with his identification of Mr. Edwin Hernandez–Favale[ ] in this photo spread, you put that together with the constructive possession of this weapon [Lado's gun] four days after the carjacking.

At this juncture, defense counsel objected. The district court overruled the objection, and the prosecutor continued:

> And I submit to you ladies and gentlemen of the jury that the evidence before the Court is

both to the trial court's overruling of his contemporaneous objection to those comments and to the court's denial of his subsequent motion for a mistrial.

Our approach is familiar. We first must determine whether the trial court abused its discretion in overruling the objection (thus, in effect, deeming the prosecutor's remarks proper), and, if so, we must proceed to decide whether the offending remarks were sufficiently prejudicial that they served to deny the defendant a fair trial. *See United States v. Grabiec*, 96 F.3d 549, 552 (1st Cir.1996); *United States v. Wood*, 982 F.2d 1, 4 (1st Cir.1992). As to the appellant's related point, we likewise review the district court's resolution of a mistrial motion under an abuse of discretion rubric. *See United States v. Pierro*, 32 F.3d 611, 617 (1st Cir. 1994). Here, because the appellant premised his motion for a mistrial on the challenged portion of the prosecutor's summation, the two assignments of error merge into a single forensic unit, and we consider them as such.

The government concedes that it charged Hernandez in count three with possession of a firearm other than Lado's .45 caliber pistol. The appellant maintains, however, that the prosecutor's reference to Lado's gun confused the issue and led to a conviction on count three based on his constructive possession of that weapon. In short, the appellant insists that, because of the prosecutor's improper argument, the jury found him guilty of possessing a firearm (namely, Lado's pistol) other than the one for which he was indicted (namely, the small, nickel-plated pistol that never surfaced).

This theory lacks force. The record reveals that the prosecutor's summation was well within the pale. In it, he suggested that, because Lado's pistol was in Alicea's waistband when Alicea and Hernandez were arrested, the jury could find Hernandez to have had constructive possession of Lado's pistol *on February 3* and could infer, based on such a finding, that Hernandez was at the crime scene on January 30 and took the car containing the weapon. If any ambiguity exists as to the purport of the prosecutor's soliloquy—and we see none—his remarks during the rebuttal portion of his closing statement, reproduced in the margin, make it crystal clear that the prosecutor aimed his constructive possession reference solely in this direction.[5]

That ends the matter. Since the challenged portion of the summation was proper, the district court did not err either in overruling the appellant's objection or in denying his subsequent motion for a mistrial.[6]

### C. The Jury Note.

While a jury deliberates, the attorneys typically hover near an empty courtroom awaiting the verdict. Sometimes, however, the judge cuts counsel some slack and permits them to wander. In this instance, after charging the jury, Judge Perez–Gimenez gave the attorneys clear instructions: they need not remain in the courtroom, but they were to leave word of their whereabouts with the clerk and be available to the court

---

that both Mr. Alicea and [Hernandez] were placed under arrest in Bayamón at the same place by policeman Rivera. Yes, Mr. Alicea has the gun in his waist but you members of the jury think about it, put things together and see if you can match why this gun got to be there.

5. During his rebuttal argument, the prosecutor stated:

[S]ister counsel tells you that this gun of Mr. Lado is not related to count one or count two or count three.

I have got bad news for her, this gun is related to count one of the indictment and it is ... the very same gun which was in the automobile of Juan Carlos Lado that is found in the constructive possession of Mr. Edwin Hernandez–Favale

four days later. How come it is not related? Of course, it is related. It is a very valuable piece of evidence.

6. Defense counsel made the mistrial motion at the conclusion of the district court's charge. At the same time, she indicated that some sort of cautionary instruction should be given. She did not, however, propose an actual instruction. Thus, though Hernandez's appellate counsel hints that the district court's failure to give a cautionary instruction constituted an independent error, the point is procedurally defaulted. *See Parker v. City of Nashua*, 76 F.3d 9, 12 (1st Cir.1996) (explaining that "the judge must be told *precisely* what the problem is, and as importantly, what the attorney would consider a satisfactory cure") (emphasis in original); *see generally* Fed.R.Civ.P. 51.

on ten minutes notice. The judge made it plain that he would wait no longer than ten minutes should the jury propound a question. The appellant's trial counsel availed herself of the court's largesse and left word that she would be in a magistrate judge's courtroom on the same floor of the courthouse.

During the course of their deliberations, the jurors sent the judge a note requesting a definition of the term "possession of a firearm" vis-à-vis count three. Judge Perez–Gimenez summoned the attorneys. When the appellant's counsel did not appear within the allotted time, the judge summoned her again and waited an additional ten minutes, but to no avail. The judge then took the bull by the horns and responded to the jurors' query by furnishing them with a written copy of the instruction on possession that he previously had read as part of his charge. This instruction included a passage on constructive possession. When the appellant's lawyer finally returned to the courtroom and learned what had transpired, she voiced no objection to the judge's handling of the note. Shortly thereafter, the jury returned its verdict.

The appellant subsequently filed a motion for a new trial predicated upon the jury note incident. The judge denied the motion. Hernandez assigns error. We discern none.

■ The preferred practice for addressing a question from a deliberating jury includes ensuring that the question is reduced to writing, marking the note as an exhibit for identification, sharing it with counsel, and affording the lawyers an opportunity to suggest an appropriate rejoinder. *See United States v. Parent,* 954 F.2d 23, 25 (1st Cir. 1992); *Maraj,* 947 F.2d at 525; *United States v. Akitoye,* 923 F.2d 221, 225–26 (1st Cir.1991). Withal, this practice is not the product of an ironclad rule, and the trial court retains a modicum of flexibility to adjust to the exigencies of particular situations. So here: under the unusual circumstances of this case, we uphold the judge's actions notwithstanding his deviation from preferred practice.

■ Courts must operate in an orderly fashion. Thus, when a judge sets a reasonable restriction on counsel's actions and communicates it clearly, lawyers subsequently violate that restriction at their peril. *See Smith v. Massachusetts Inst. of Technology,* 877 F.2d 1106, 1110 (1st Cir.1989). This case illustrates the point. The judge forewarned all the attorneys that he would wait no longer than ten minutes for them to respond if their presence was required. When he received the jury note, he sent a court security officer (CSO) to the magistrate's courtroom to alert appellant's counsel. The CSO made three separate trips down the hall, but the attorney did not respond.[7] After more than twenty minutes had passed, the court then acted unilaterally (without consulting the prosecutor, who had been patiently awaiting opposing counsel's arrival) and furnished the jurors with an instruction that he previously had read to them without objection. Under the circumstances, this was a reasonable course of action. The failure to follow standard practice was not attributable to judicial error, but to counsel's default. *See id.* (warning that if lawyers absent themselves during jury deliberations, "they take their chances on what is said and done by the court in their absence").

■ We hasten to add that, even were we prepared to hold that Judge Perez–Gimenez's actions constituted cognizable error, we would pronounce any such error harmless. A party's failure properly to preserve an objection to a jury instruction contained in the original charge forfeits the point, and the defaulting party cannot resuscitate the forfeited point by objecting to the court's later repetition of the same instruction in response to a jury question. *See Fan Fare, Inc. v. Fourdel Indus., Ltd.,* 563 F.Supp. 754, 756–57 (M.D.Ala.1983), *aff'd,* 732 F.2d 943 (11th Cir.1984) (Table); *cf. Almonte v. National Union Fire Ins. Co.,* 787 F.2d 763, 767–69 (1st Cir.1986). Moreover, the judge's response here hewed closely "to the approximate boundaries of the jury's inquiry," *United States v. Ladd,* 885 F.2d 954, 961 (1st Cir.1989), and the appellant, even at this late

---

7. There is no indication in the record that the magistrate judge refused to release her or other-

wise disabled her from responding to the district court's summons.

date, has pointed to no misstatement of any legal principle cover:d in the instruction. *See, e.g., United States v. Rogers,* 41 F.3d 25, 30 (1st Cir.1994) (finding no error in jury instruction containing substantially similar definition of constructive possession). Consequently, we discern no substantial prejudice stemming from the judge's handling of the note.

## III. CONCLUSION

We need go no further. Although the jury's verdict is oddly configured, that portion of the verdict which relates to count three is amply supported by the evidence. Because that is so, and because neither the prosecutor's summation nor the judge's handling of the jury note afford any basis for setting aside the conviction, the judgment below must be

*Affirmed.*